IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

COLIN L. CROW,               )     CIVIL NO. 15-00161 SOM/KJM
                             )
         Plaintiff,          )
                             )
    vs.                      )     ORDER GRANTING DEFENDANT'S
                             )     MOTION FOR SUMMARY JUDGMENT
OCWEN LOAN SERVICING, LLC;   )
REAL TIME RESOLUTIONS, INC., )
                             )
         Defendants.         )
                             )
                             )
_____)

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.      INTRODUCTION.**

          This lawsuit stems from a dispute about the validity

and proper servicing of a mortgage loan taken out by pro se

Plaintiff Colin Crow and serviced by Defendant Real Time

Resolutions, Inc.  Crow is suing Real Time for alleged violations

of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C.

§ 2605, et seq., and the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. § 1692, et seq.  Crow asserts that Real Time

violated RESPA by failing to timely respond to his "qualified

written requests" ("QWRs").  Crow also asserts that Real Time

violated the FDCPA by failing to include certain statements in

its first written notice, harassing Crow, and providing false or

misleading representations.  Crow additionally seeks an order

quieting title to the subject property.

          Before this court is Real Time's motion for summary

judgment.  Real Time argues that Crow's RESPA claim is barred by his failure to show actual damages, that Crow's FDCPA claim is barred by the FDCPA's one-year statute of limitations, and that Crow is not entitled to an order quieting title against Real Time.

This court grants Real Time's motion for summary judgment on all counts.

II.        **BACKGROUND.**

In August 2005, Crow obtained a $200,000 loan from Homeward Residential to purchase real property.  <u>See</u> ECF No. 1, PageIDs #s 2-3.  The loan was secured by a mortgage on the property.  <u>See</u> <u>id.</u>, PageID # 3.  Homeward originally serviced the loan itself.  <u>See</u> ECF No. 32, PageID # 190.  At some point, Crow stopped making payments to Homeward.  <u>See</u> <u>id.</u>

Homeward subsequently transferred the servicing rights on the loan to Real Time.  <u>See</u> ECF No. 1-4.  On or about February 4, 2010, Real Time wrote to Crow to tell him that Real Time was the new loan servicer.  <u>See</u> <u>id.</u>  Crow's nonpayment continued. <u>See</u> ECF No. 33-1.

Crow hired Fresh Start Legal Network, LLC, a credit counseling agency, to send two letters to Real Time, which he says were QWRs, requesting various documents and information. <u>See</u> ECF Nos. 1-4, 1-5.  Crow alleges that the first letter ("First Letter") to Real Time was sent on or about December 13,

2012.  <u>See</u> ECF No. 1, PageID # 4.  Real Time alleges that it never received the First Letter by post.  <u>See</u> ECF No. 33, PageID # 216.  The letter itself does not list the address to which it was sent, noting only "Attention: Real Time Resolutions-Disputes/Account Resolution Department" with no street address, post office box, city, state, or zip code.  <u>See</u> ECF No. 1-4.  Real Time states that it only received the First Letter on March 5, 2013, as an attachment to an email regarding a settlement offer made by Crow's agent.  <u>See</u> ECF No. 33, PageID # 216.  Real Time responded to the First Letter on March 13, 2013.  <u>See</u> ECF No. 1-6.

Real Time's response to the First Letter provided documents requested by the First Letter, including the Notice of Assignment, Sale or Transfer of Servicing Rights, the Collection Agreement between Homeward and Real Time, the original Balloon Note, the signed Mortgage, and the Loan History Summary and Temporary Billing Statement.  <u>See</u> <u>id.</u>

Crow alleges that the second letter ("Second Letter") was sent to Real Time on or about January 13, 2013.  <u>See</u> ECF No. 1, PageID # 5.  The parties do not dispute that Real Time had a designated address for receiving QWRs.  <u>See</u> ECF No. 32, PageID # 196; ECF No.38, Page ID # 5.  That address was "P.O. Box 36655, Dallas, TX 75235."  <u>See</u> ECF No. 33-1, PageID # 216.  However, the Second Letter is addressed to Real Time at "1349 Empire Central

3

#150, Dallas, TX 75247." <u>See</u> ECF No. 1-5.  This is an address
shown on Real Time's website, on the letterhead Real Time used
when it responded to the First Letter on a date after the Second
Letter was allegedly sent, and in a settlement offer sent by Real
Time to Crow on or about January 23, 2015, more than two years
after Crow says the Second Letter was sent.  <u>See</u> ECF Nos. 1-6, 1-
9; <u>see also</u> ECF No. 39, PageID # 253.  Real Time alleges that it
never received the Second Letter. <u>See</u> ECF No. 33, PageID # 216.

        Crow filed this lawsuit on May 4, 2015.  <u>See</u> ECF No.
1.[1]  Crow asserts that Real Time violated federal consumer
protection laws, namely RESPA (Count I) and the FDCPA (Count II).
<u>See</u> <u>id.</u>, PageID #s 7-9.  Crow also seeks to quiet title to the
subject property (Count III).  <u>See</u> <u>id.</u>, PageID #s 10-11.  Crow
claims that he suffered damages in the form of substantial costs
in order to vindicate his lawful rights, slander of his
reputation, and illegitimate reporting to credit bureaus.  <u>See</u>
<u>id.</u>, PageID #s 7-11.

        On March 16, 2016, Real Time moved for summary
judgment.  <u>See</u> ECF No. 32.

---

        [1] The Complaint also named Ocwen Loan Servicing, LLC as a
Defendant.  <u>See</u> ECF No. 1.  Ocwen is the servicer of a mortgage
that is not the subject of any of Crow's claims in this suit.
<u>See</u> ECF No. 8, PageID # 104.  This court granted Ocwen's
unopposed Motion to Dismiss the Complaint.  <u>See</u> ECF No. 16.

III.        **LEGAL STANDARD.**

Summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2010).  One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The movants must support their position that a material fact is or is not genuinely disputed by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials"; or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.  A moving party without the ultimate burden of persuasion at trial--usually, but not always, the defendant--has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.

Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., 210 F.3d 1099,
1102 (9th Cir. 2000).

The burden initially falls upon the moving party to
identify for the court those "portions of the materials on file
that it believes demonstrate the absence of any genuine issue of
material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors
Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp.,
477 U.S. at 323). "When the moving party has carried its burden
under Rule 56(c), its opponent must do more than simply show that
there is some metaphysical doubt as to the material facts."
Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S.
574, 586 (1986) (footnote omitted).

The nonmoving party must set forth specific facts
showing that there is a genuine issue for trial. T.W. Elec.
Serv., Inc., 809 F.2d at 630. At least some "'significant
probative evidence tending to support the complaint'" must be
produced. Id. (quoting First Nat'l Bank of Ariz. v. Cities
Serv. Co., 391 U.S. 253, 290 (1968)). See Addisu, 198 F.3d at
1134 ("A scintilla of evidence or evidence that is merely
colorable or not significantly probative does not present a
genuine issue of material fact."). "[I]f the factual context
makes the non-moving party's claim implausible, that party must
come forward with more persuasive evidence than would otherwise
be necessary to show that there is a genuine issue for trial."

6

Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818
F.2d 1466, 1468 (9th Cir. 1987) (citing Matsushita Elec. Indus.
Co., 475 U.S. at 587).  Accord Addisu, 198 F.3d at 1134 ("There
must be enough doubt for a 'reasonable trier of fact' to find for
plaintiffs in order to defeat the summary judgment motion.").

On a summary judgment motion, all evidence and
inferences must be construed in the light most favorable to the
nonmoving party.  T.W. Elec. Serv., Inc., 809 F.2d at 631.
Inferences may be drawn from underlying facts not in dispute, as
well as from disputed facts that the judge is required to resolve
in favor of the nonmoving party.  Id.  When "direct evidence"
produced by the moving party conflicts with "direct evidence"
produced by the party opposing summary judgment, "the judge must
assume the truth of the evidence set forth by the nonmoving party
with respect to that fact."  Id.

IV.     ANALYSIS.

A.   Crow Fails To Show Entitlement to Recovery Under
     RESPA.

Crow argues that Real Time violated RESPA by failing to
respond in a timely manner to the First Letter and Second Letter,
which Crow says were QWRs.  See ECF No. 1, PageID # 7.

RESPA is a consumer protection statute pursuant to
which, among other things, a loan servicer must provide servicing
information requested by a borrower and verify how payments have
been applied.  Under the provision in effect at the time of Real

Time's alleged violations, RESPA provided:

> If any servicer of a federally related
> mortgage loan receives a qualified written
> request from the borrower (or an agent of the
> borrower) for information relating to the
> servicing of such loan, the servicer shall
> provide a written response acknowledging
> receipt of the correspondence within 20 days
> . . . unless the action requested is taken
> within such period.

12 U.S.C. § 2605(e)(1)(A).[2]

> RESPA defines a "qualified written request" as:

> a written correspondence, other than notice
> on a payment coupon or other payment medium
> supplied by the servicer, that--(i) includes,
> or otherwise enables the servicer to
> identify, the name and account of the
> borrower; and (ii) includes a statement of
> the reasons for the belief of the borrower,
> to the extent applicable, that the account is
> in error or provides sufficient detail to the
> servicer regarding other information sought
> by the borrower.

12 U.S.C. § 2605(e)(1)(B).

Crow says the First Letter was mailed to Real Time's
designated address for QWRs.  See ECF No. 39, PageID # 253.  Real
Time says it received the First letter not in the mail but months
later as an email attachment.  See ECF No. 33, PageID # 216.
There is no dispute that the Second Letter bears a Real Time

---

[2] This provision has been amended to provide that the
servicer must provide written acknowledgment of receipt within 5
days, but at the time in issue here, a servicer had 20 days.  12
U.S.C. § 2605(e)(1)(A).  At the time relevant to this case, a
servicer had 60 days (unless extended) in which to provide a
substantive response, but, effective January 2014, that time was
shortened to 30 days.  12 U.S.C. §§ 2605(e)(2), 2605(e)(4).

address other than the one designated for the submission of QWRs. <u>See</u> ECF No. 33-1, PageID # 216; ECF No. 39-3, PageID # 253.  The Real Time address for the Second Letter was Real Time's physical address.  <u>See</u> ECF No. 39-3, PageID # 253.

Real Time's position is that it had no duty to respond to a letter not sent to the address designated for receiving QWRs.  <u>See</u> ECF No. 32, PageID # 196.

This court begins by examining whether summary judgment is warranted based on what Real Time says is its nonreceipt of Crow's letters at the address designated for QWRs.  Concluding that Real Time does not establish that summary judgment is warranted on that ground, this court turns to the separate issue of whether Crow shows damages flowing from an alleged RESPA violation.  On the second ground, the court grants summary judgment to Real Time on the RESPA claim.

> **1.   Real Time Does Not Show Entitlement to Summary Judgment on the Ground That Crow's Letters Were Sent to the Wrong Place.**

As of the dates of the First Letter and the Second Letter, a loan servicer, "[b]y notice either included in the Notice of Transfer or separately delivered by first-class mail," was allowed to "establish a separate and exclusive office and address for the receipt and handling of qualified written requests."  24 C.F.R. § 3500.21(e)(1).  Although not attested to as authentic, Crow attaches to his Complaint as Exhibit 3 a

Notice of Assignment, Sale or Transfer of Servicing Rights that lists "P.O. Box 36655, Dallas, TX 75235-1655," as the address for correspondence sent to Real Time.  See ECF No.1-3.  That Notice is dated February 4, 2010.  See id.

In June 2014, administration of RESPA regulations, including the regulation allowing a "separate and exclusive office and address," was transferred from the Department of Housing and Urban Development to the Consumer Financial Protection Bureau.  79 Fed. Reg. 115,34224 (June 16, 2014). The successor to 24 C.F.R. § 3500.21(e)(1) is 12 C.F.R. § 1024.35(c), which now provides that "[a] servicer may, by written notice provided to a borrower, establish an address that a borrower must use to submit a notice of error."  12 C.F.R. § 1024.35(c). The use of the words "a borrower must use" is consistent with Real Time's argument that a QWR sent to a location other than the address designated to receive QWRs does not trigger a duty under RESPA.  See ECF No. 32, PageID # 196.  However, this court looks at the regulation in effect in late 2012 and early 2013, when Crow says he sent his letters.  That iteration of the regulation was not as clearly mandatory.

Real Time states that it had no record of receiving the First Letter until that letter was sent to it by email on March 4, 2013.  See ECF No. 33-1, PageID # 216.  Crow states that he sent the letter to Real Time via the United States Postal Service

to the address designated for QWRs. <u>See</u> ECF No. 39-3, PageID # 253. As evidence, Crow submits a copy of the letter that he says was sent on or about December 13, 2012. <u>See</u> ECF No. 1-4. That letter, however, bears no address at all for Real Time, and Crow has no evidence that Real Time actually received the First Letter at the designated address.

At this point, this court applies the common law "mailbox rule," which recognizes a rebuttable presumption that an item properly mailed was received by the addressee. <u>See, e.g.</u>, <u>Schikore v. BankAmerica Supplemental Retirement Plan</u>, 269 F.3d 956, 961-62 (9th Cir. 2001); <u>Mahon v. Credit Bureau of Placer County Inc.</u>, 171 F.3d 1197, 1202 (9th Cir. 1999). Mere claims of nonreceipt, without probative evidence, are insufficient to rebut a presumption of receipt under the mailbox rule. <u>See Schikore</u>, 269 F.3d at 964.

As evidence of proper mailing, Crow has provided a sworn declaration that he mailed the First Letter to Real Time's designated address for QWRs. <u>See</u> ECF No. 39, PageID # 253. The Ninth Circuit has held that "a sworn statement is credible evidence of mailing for purposes of the mailbox rule." <u>See Schikore</u>, 269 F.3d at 964 (citing <u>Lewis v. United States</u>, 144 F.3d 1220, 1223 (9th Cir. 1998)).

The only matter going to nonreceipt that Real Time points to in addition to its denial is what Real Time says is the

11

inconsistency between Crow's declaration stating that he personally mailed the letters and his Complaint.  See ECF No. 40, PageID #s 256-57. The Complaint alleges that "Plaintiff, through Plaintiff's authorized agent, sent a 'qualified written request' to Real Time."  See ECF No. 40, PageID # 257; see also ECF No. 1, PageID # 4.  Real Time contends that, if the Complaint is stating that Fresh Start sent the letters, then Crow could not have personal knowledge of the mailing and could not attest to that in his declaration.  See id.

At summary judgment, a court is not to weigh the evidence and determine what is true, but is to determine whether there is a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor."  Id. at 255.  Nevertheless, a court should not rely on evidence for summary judgment that is clearly contradicted by the record.  See, e.g., Scott v. Harris, 550 U.S. 372, 380 (2007) (reversing court of appeals for relying on disputed issue of fact that was clearly contradicted by the record).

Crow's statement that he mailed the letters is not clearly contradicted by his Complaint.  The Complaint alleges that he sent the letters "through" or "via" Fresh Start.  See ECF No. 1, PageID #s 4, 5.  Although this could mean that Fresh Start

12

itself mailed the letters out of Crow's presence, it could also mean that Fresh Start assisted Crow in preparing the letters.  At the very least, the Complaint is unclear as to whether it is alleging that Crow or Fresh Start placed the letters in the mail. The letters themselves do not establish who mailed them.  <u>See</u> ECF Nos. 1-4, 1-5.  Because Real Time does not show that Crow's declaration is clearly inconsistent with the Complaint or anything else in the record, this court sees no reason to disregard or discount Crow's declaration in concluding that a triable issue of fact exists as to where the First Letter was sent and whether it was received by Real Time around the time it was sent.

The court turns now to Crow's Second Letter, which Crow admits was not sent to the address designated for QWRs.  <u>See</u> ECF No. 38, PageID # 232; <u>see also</u> ECF No. 1-5.

Courts in other circuits have read 24 C.F.R. § 3500.21(e)(1) as providing that a QWR not sent to the address designated for receipt and handling of QWRs does not trigger a servicer's duties under RESPA.  <u>See</u> <u>Berneike v. CitiMortgage, Inc.</u>, 708 F.3d 1141, 1149 (10th Cir. 2013); <u>Roth v. CitiMortgage Inc.</u>, 756 F.3d 178, 180 (2d Cir. 2014).

In <u>Berneike</u>, the Tenth Circuit, reviewing the version of the regulation in effect for the period relevant to Crow's lawsuit, explained that RESPA's implementing regulation allowed a

13

loan servicer to establish a designated address for QWRs.  See 708 F.3d at 1145.  The borrower in Berneike had not sent her correspondence to the designated address, and the district court dismissed her RESPA claim.  See id. at 1144.  The Tenth Circuit affirmed, stating, "Receipt at the designated address is necessary to trigger RESPA duties, and Citi did not receive Berneike's letters at the designated address. Accordingly, the district court did not err in dismissing Berneike's RESPA claim." Id. at 1149.

In Roth, the Second Circuit, also examining the version of the regulation applicable in the present case, held that the mailing of a QWR to an address other than one that has been properly designated by the servicer does not trigger the servicer's duty to respond under RESPA, even if the servicer received the QWR at another address.  See 756 F.3d at 180.  The plaintiff in that case sent three letters to the defendant loan servicer at two different company addresses in Missouri and Iowa, neither of which was the designated QWR address in Maryland.  See id.  Agreeing with the Tenth Circuit's reasoning in Berneike, the Second Circuit affirmed the district court's dismissal of the RESPA claims on the ground that the letters had not been sent to the servicer's designated address.  See id. at 183.

Like the borrower in Roth, Crow says he sent his Second Letter to one of Real Time's addresses, but not the address

14

designated for QWRs.  <u>See</u> <u>id.</u>  The Ninth Circuit has not spoken to the issue of whether, under the regulation in effect when Crow says the First Letter and the Second Letter were sent, sending a QWR to an address other than the address properly designated by a servicer for the submission of QWRs triggered a duty on the servicer's part to respond under RESPA.  If the Ninth Circuit applied the reasoning of the Tenth Circuit and the Second Circuit to the circumstances presented here, Real Time's receipt of the QWR at its other address would not suffice to trigger a RESPA duty, and Real Time would be entitled to summary judgment on the RESPA claim with respect to the Second Letter.  <u>See</u> <u>id.</u> at 183.

However, Crow says that he did not send the Second Letter to the designated address because he had sent the First Letter to the designated address and had received no response.  <u>See</u> ECF No. 38, PageID # 232-33.  Neither <u>Berneike</u> nor <u>Roth</u> involved that or an analogous assertion.  <u>See</u> <u>Berneike</u>, 708 F.3d 1141; <u>Roth</u>, 756 F.3d 178.  Real Time does not even consider whether this alleged circumstance might affect how the old regulation should apply.  Possibly, this circumstance would not warrant a result different from that reached by the Tenth and Second Circuits, but Real Time's failure to address this issue at all renders incomplete its argument that it is entitled to summary judgment as a matter of law with respect to the Second letter solely because it was not sent to the designated address.

15

This issue is not a question of fact.  It is a legal issue, but as the party moving for summary judgment, Real Time has the burden of persuasion on that legal issue.

Real Time is not entitled to summary judgment on the RESPA claim based on where the First Letter and Second Letter were sent or on whether they were received.  Crow has established a genuine issue of material fact as to where the First Letter was sent and, given the mailbox presumption, as to whether Real Time received the First Letter.  With respect to the Second Letter, Real Time has not completely discussed the legal issues.

### 2.  Crow Fails to Show Actual Damages Caused by a RESPA Violation.

Real Time's second basis for seeking summary judgment on the RESPA claim concerns Crow's damages.  On this second basis, this court agrees with Real Time.

Under 12 U.S.C. § 2605(f)(1), Crow must establish that he has suffered actual damages causally related to the alleged RESPA violation.  That is, damages are a required element of any RESPA claim.  The failure to provide evidence of actual damages resulting from the alleged violation is fatal to a RESPA claim. Cf. Zhang v. Countrywide Home Loans, Inc., 601 Fed. App'x 567, 567 (9th Cir. 2015) (affirming district court's dismissal of plaintiff's RESPA claim alleging inadequate responses to QWRs because plaintiff failed to allege facts sufficient to show she suffered actual damages as result of alleged violation); Carswell

16

v. JP Morgan Chase Bank N.A., 500 Fed. App'x 580, 582 (9th Cir.
2012) (affirming district court's dismissal of plaintiff's RESPA
claim for failure to allege any actual damage, which is required
element of RESPA claim).

     Crow provides no evidence of actual damages.  Crow
instead only alleges that he has incurred costs to "vindicate his
lawful rights" and that he has "suffered slander of his
reputation and illegitimate reporting to credit bureaus."  See
ECF No. 1, PageID # 11.

     With respect to any costs incurred to "vindicate his
lawful rights," the filing of a lawsuit does not suffice as proof
of actual damages.  See Lal v. Am. Home Servicing, Inc., 680 F.
Supp. 2d 1218, 1223 (E.D. Cal. 2010) (noting that RESPA requires
damages "as a result" of a failure to comply with RESPA, and that
counting litigation as damages would allow every plaintiff to
establish damages, thereby nullifying the damage requirement).

     When asked at the hearing on the present motion what
damages he suffered in "vindicat[ing] his lawful rights," Crow
identified only the fees paid to Fresh Start for its part in the
two letters Crow says were sent to Real Time.  This court begins
by examining the First Letter in this context.  The alleged RESPA
violation relating to the First Letter rests on Real Time's
alleged failure to respond to that letter.  Any fees relating to
the preparation or sending of that letter cannot have been

17

incurred "as a result" of the alleged failure to respond to the letter.  The Fresh Start fees tied to the First Letter therefore do not constitute actual damages caused by any RESPA violation.

Although Crow himself has not said that the fees paid to Fresh Start for the preparation or sending of the Second Letter were the result of Real Time's alleged failure to respond to the First Letter, this court considers that possibility.  As explained by Crow, the Second Letter was sent to Real Time's physical address because he received no response to the First Letter, which was allegedly sent to the correct address for QWRs. See ECF No. 38, PageID # 232-33.

However, the court rejects the possibility that fees relating to the Second Letter flowed from Real Time's failure to respond to the Second Letter because that possibility runs afoul of the facts in the record.  The Second Letter was dated January 13, 2013, a month after the date of the First Letter, which was December 13, 2012.  As noted earlier in this order, upon receipt of a QWR, Real Time was required to acknowledge receipt within 20 business days.  See 12 U.S.C. § 2605 (e)(1)(A) (requiring servicer to "provide a written response acknowledging receipt of the correspondence within 20 days").  Crow and Fresh Start even acknowledged this provision directly in the First Letter, which stated, "As defined under Section 6 of RESPA you are required to acknowledge our request within 20 business days and must try to

resolve the issue within 60 business days." <u>See</u> ECF No. 1-4.

The Second Letter bears a date of January 13, 2013,
which was less than 20 business days from the First Letter.  Fees
incurred on or before January 13, 2013, could not have been
caused by any failure by Real Time to respond to the First
Letter, because Real Time's acknowledgment time had not expired.

Even assuming the First Letter, dated December 13,
2012, was mailed on December 13, 2012, and received by Real Time
on December 14, 2012, just one day after the date on the First
Letter, Real Time's alleged failure to acknowledge receipt would
not have been a violation of RESPA until, at the earliest,
January 15, 2013.

December 14, 2012, was a Friday.  RESPA counts only
business days.  The first day of the 20-day period would
therefore have concluded on Monday, December 17, 2012.  The
following days were also business days in 2012: December 18
(Tuesday), 19 (Wednesday), 20 (Thursday), 21 (Friday), 24
(Monday), 26 (Wednesday), 27 (Thursday), 28 (Friday), and 31
(Monday).  That is, there were 10 business days in December 2012
relevant to the 20-day period.  The court then counts 10 more
business days in January 2013: January 2 (Wednesday), 3
(Thursday), 4 (Friday), 7 (Monday), 8 (Tuesday), 9 (Wednesday),
10 (Thursday), 11 (Friday), 14 (Monday), and 15 (Tuesday).

Crow says the Second Letter was sent on or about

January 13, 2013.  <u>See</u> ECF No. 39, PageID # 253.  The date on the
Second Letter itself is January 13, 2013.  <u>See</u> <u>id.</u>  Nothing in
the record suggests that the Second Letter was prepared after
January 13,2013, but backdated to that date.  The Second Letter
instead appears to have been prepared before Real Time's time to
respond to the First Letter had even lapsed.  Crow appears to
have made the decision to prepare the Second Letter, and to have
incurred fees for doing so, before knowing whether Real Time
would violate RESPA.  Thus, fees relating to the Second Letter
cannot be said to have been caused by a RESPA violation.

Neither Fresh Start's fees relating to the First Letter
nor Fresh Start's fees relating to the Second Letter can be said,
based on the record, to constitute actual damages caused by Real
Time's alleged RESPA violations.

With respect to the "slander of his reputation," Crow
clarified at the hearing on the present motion that any slander
was in the form of negative credit reporting, not any harm
separate from that.

This court therefore turns to the alleged "illegitimate
reporting to credit bureaus."  Crow provides no proof of any
illegitimate or negative credit reporting.  Nor does Crow show
how any report hurt him.  "To constitute actual damages, the
negative credit rating must itself cause damage to the plaintiff
as evidenced by, for example, failing to qualify for a home

mortgage." Anokhin v. BAC Home Loan Servicing, LP, No. 2:10-CV-00395, 2010 WL 3294367, at *3 (E.D. Cal. Aug. 20, 2010) (citing McLean v. GMAC Mortgage Corp., 595 F. Supp. 2d 1360 (S.D. Fla. 2009)).

Even if negative credit reporting occurred and were, without more, sufficient to constitute damage under RESPA, Real Time is entitled to summary judgment given Crow's failure to show that any such reporting was caused by Real Time's alleged failure to respond to a QWR. See Croskrey, 2016 WL 3135643, at *12 (granting summary judgment to defendant on plaintiff's RESPA claim because there was "no evidence that the alleged RESPA violations resulted in any actual damages"); Lawther v. OneWest Bank, FSB, No. C-10-00054 JCS, 2012 WL 298110, at *16 (N.D. Cal Feb. 1, 2012) (granting defendant's motion for summary judgment when plaintiff produced no evidence of actual harm causally connected to alleged RESPA violation); Ramanujam v. Reunion Mortgage, Inc., No. 5:09-cv-03030-JF/HRL, 2011 WL 446047, at *5 (N.D. Cal. Feb. 3, 2011) (granting summary judgment on RESPA claim when plaintiff failed to establish that his inability to acquire more favorable financing resulted from alleged RESPA violation).

The record establishes that Crow had already defaulted on his loan even before Real Time began servicing it. See ECF No. 32, PageID # 190. If Crow had a negative credit report, it

is incumbent on him to show that it was a result of a RESPA violation, as opposed to a result of any pre-existing or continuing failure to make payments on his loan.  At the hearing on the present motion, Crow was unable to direct this court to evidence in the record indicating that there was any negative credit report, much less a report relating to a RESPA violation. That is, Crow failed to provide evidence of "some colorable relationship between his injury and the actions or omissions that allegedly violated RESPA."  See Allen v. United Fin. Mortgage Corp., No. 09-2507 SC, 2010 WL 1135787, at *5 (N.D. Cal. March 22, 2010).

Crow may be attempting to assert a claim under 12 U.S.C. § 2605(e)(3), although that is not expressly asserted in the Complaint.  Section 2605(e)(3) prohibits a loan servicer from making reports to consumer reporting agencies within 60 days of receiving a QWR.  12 U.S.C. § 2605(e)(3) ("During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 1681a of Title 15).").  Even if Crow is asserting such a claim, Real Time is entitled to summary judgment because Crow offers no

22

evidence that Real Time provided information to any reporting agency during the 60-day window.

This court grants Real Time's motion for summary judgment on Count I because Real Time has shown the absence of a genuine issue of material fact regarding whether Crow was actually damaged by a RESPA violation.

### B.   Crow's FDCPA Claim is Time-Barred.

In Count II, Crow argues that Real Time committed several violations of the FDCPA under 15 U.S.C. § 1692.  See ECF No. 1, PageID #s 8-9.  Crow asserts that Real Time failed to include particular statements in the debt validation notice within five days of the initial communication, as required under § 1692g.  See ECF No. 1, PageID # 3.  Crow also alleges that Real Time harassed him in violation of § 1692d and made false or misleading representations to him in violation of § 1692e.  See id., PageID # 9.

Real Time argues that Crow's FDCPA claim is barred by the one-year statute of limitations set forth in 15 U.S.C. § 1692k.  See ECF No. 32, PageID #s 203-04.

Section 1692k(d) provides that an action to enforce liability under the FDCPA may be brought "within one year from the date on which the violation occurs."  Crow is suing Real Time for having allegedly failed to include certain statements in the § 1692g(a) debt validation notice within five days of its initial

23

communication with Crow, which was the Notice of Assignment, Sale or Transfer of Servicing Rights dated February 4, 2010.  See ECF No. 1-3.  Crow filed this lawsuit on May 4, 2015, well beyond the one-year statute of limitations.

Crow urges this court to apply the "discovery rule" because he is "not [an] attorney or a person well-versed in the law" and, as a result, was not aware of the violations and his claims at the time they arose.  See ECF No. 38, PageID #s 237-38. Under the discovery rule, the statute of limitations is tolled and a claim accrues when a plaintiff knows or has reason to know, with reasonable diligence, of the injury that is the basis of the action.  See Mangum v. Action Collection Serv., Inc., 575 F.3d 935, 940 (9th Cir. 2009) (citing Norman-Bloodsaw v. Lawrence Berkeley Lab., 135 F.3d 1260, 1266 (9th Cir. 1998)).  Crow argues that, under the discovery rule, the limitations period only began to run when he became aware of his claims after consulting "knowledgeable third parties" regarding his legal options, which he says occurred within the year before he filed this lawsuit. See ECF No. 38, PageID # 238.

The discovery rule may be applied to FDCPA claims.  See Mangum, 575 F.3d at 941 (applying discovery rule to FDCPA claim and holding that plaintiff's claim against debt collector accrued when plaintiff first became aware or could have become aware of the fact that violating acts had occurred).  However, the rule

24

does not apply here.

Crow is not relying on his discovery of facts.   He is instead looking at when he learned what the law provided.   The Ninth Circuit has held that "the statute of limitations is not tolled by a party's ignorance of the law."   See Neal v. Sumner, 981 F.2d 295, (9th Cir. 1989) (citing Sierra Pacific Power Co. v. Nye, 389 P.2d 387, 390 (Nev. 1964) (holding that "mere ignorance of the existence of a cause of action . . .  will not postpone the operation of the statute of limitations")).   Crow's unfamiliarity with the law does not toll the FDCPA's statute of limitations when he knew or should have known about the actions supporting any FDCPA claim within a year from his first written notice from Real Time.[3]

Because Crow did not bring this action within the applicable statute of limitations, Real Time is entitled to summary judgment as to Crow's FDCPA claim.

### C.   Crow Does Not Show That He Has a Viable Quiet Title Claim Against Real Time.

Crow appears to be asserting a quiet title claim under

---

[3] The record contradicts Crow's argument that he was unaware of his claims until the year before he filed this action.   The First Letter sent to Real Time was written by Fresh Start on Crow's behalf in 2012, and the Second Letter is dated January 13, 2013.   While late 2012 and early 2013 were more than a year after Real Time's first communication with Crow, they are far earlier than the date this lawsuit was filed.   Crow had access to a credit counseling service with knowledge of the law well before the year before he filed his Complaint.

Haw. Rev. Stat. § 669-1(a), which allows an action "by any person against another person who claims, or who may claim adversely to the plaintiff, an estate or interest in real property, for the purpose of determining the adverse claim."

According to the Complaint, Real Time's actions in servicing Crow's loan constitute "an estate or interest in real property," and Real Time "claims an interest adverse to the right, title and interests of Plaintiffs in Subject Property." See ECF No. 1, PageID # 2. These are nothing but conclusory statements. Crow offers no evidence suggesting that Real Time is claiming any interest in the subject property. Crow does not show that Real Time has ever stated that it claims an interest in Crow's property. Nor does Crow offer any document relevant to such an interest on Real Time's part. Even if the lender or mortgagee whose mortgage loan Real Time is servicing has an interest in Crow's property, it is hard to see how a loan servicer like Real Time does.

Because Crow provides no evidence that his title needs to be quieted as against Real Time, this court grants summary judgment in favor of Real Time on Count III.

### D.   Leave to Amend Complaint.

Crow has requested leave to amend his Complaint even if Real Time's Motion for Summary Judgment is granted. The request is denied. While amendments are sometimes permitted when

26

complaints are dismissed based on inadequate pleadings, the present motion is based on inadequate evidence supporting a triable issue.  This is not a matter that can be cured by revising a complaint, and Crow had an obligation to present evidence supporting his claims in his opposition to Real Time's motion.

V.       **CONCLUSION.**

Real Time's motion for summary judgment is granted. The Clerk of Court is directed to enter judgment for Real Time and to close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 24, 2016.



/s/ Susan Oki Mollway

Susan Oki Mollway
United States District Judge

Crow v. Ocwen Loan Servicing, LLC, et al., Civ. No. 15-00161 SOM/KJM; ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT